**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA,

v.                                                    Criminal No. 3:23cr92

KULBIR KAUR and
HARMANPREET SINGH

        Defendants.

**MEMORANDUM OPINION**

        This matter is before the Court on the Government's MOTION
TO EXCLUDE DEFENDANT'S EXPERT (ECF No. 99) ("the Motion").
Having considered the Motion, the MEMORANDUM OF LAW IN SUPPORT
OF THE GOVERNMENT'S MOTION TO EXCLUDE DEFENDANT'S EXPERT (ECF
No. 100), the DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO
EXCLUDE DEFENSE EXPERT WITNESS (ECF No. 110), and the
GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S
MOTION TO EXCLUDE DEFENDANT'S EXPERT (ECF No. 122), and having
heard oral argument during the evidentiary hearing on December
4, 2023, the Motion will be granted.

**BACKGROUND**

**I. Factual and Procedural History**

        On May 19, 2023, the United States filed a Criminal
Complaint in this Court against defendants Kulbir Kaur ("Kaur")
and Harmanpreet Singh ("Singh") (collectively "the defendants"

or "Defendants"). ECF No. 3. It alleged that for approximately three years, Kaur and Singh conspired to and actually forced a teenaged victim, "B.S.," to work in the defendants' gas station (the "Lovely Market" or just "the store") without pay and against his will. ECF No. 3-1 at ¶¶ 4-5, 13-21. It alleged further that, in the course of the conspiracy and actual forced labor, the defendants withheld B.S.'s passport, physically abused him, denied him food and medical care, and constantly monitored his communications so as to keep him in their control. Id. at ¶¶ 13-31.

After the defendants were arrested on May 25 and May 26, 2023, a grand jury returned an INDICTMENT (ECF No. 29) charging both defendants with: Conspiracy to Commit Forced Labor (Count I), in violation of 18 U.S.C. §§ 1594(b) and 1589; Forced Labor (Count II), in violation of 18 U.S.C. §§ 1589, 1594(a), and 2; Harboring an Alien for Financial Gain (Count III), in violation of 8 U.S.C. § 1324 and 18 U.S.C. § 2; Document Servitude (Count IV), in violation of 18 U.S.C. §§ 1592 and 2; Unlawful Conduct with Respect to Immigration Documents (Count V), in violation of 18 U.S.C. §§ 1597 and 2; Conspiracy to Commit Bankruptcy Fraud and Make Fraudulent Transfers in Contemplation of Bankruptcy (Count VI), in violation of 18 U.S.C. § 371; and Fraudulent

Transfers in Contemplation of Bankruptcy (Count VII), in violation of 18 U.S.C. §§ 152(7) and 2.[1]

The INDICTMENT alleged the following facts. In or about February 2018, the defendants represented to B.S. and his parents that they would help B.S. enroll in school in the United States. ECF No. 29 at ¶9(a). B.S. is Singh's cousin and was a minor living in India at the time. Id. at ¶¶ 2-3. Once B.S. was in the country, however, the defendants began forcing B.S. to work at the Lovely Market for minimal or no compensation. Id. ¶ 8(b). The defendants confiscated B.S.'s passport and forced him to work long hours, monitored his communications through electronic surveillance, limited his access to the phone and internet, confiscated his tips, and withheld food and medical care from him. Id. at ¶ 8(c)-(d). They also physically and psychologically abused B.S., threatening him with further harm and death. Id. at ¶ 8(e). After the defendants divorced, they forced B.S. to marry Kaur and used that marriage (and B.S.'s ignorance) to threaten to take B.S.'s family's property in India. Id. at ¶ 8(f). The defendants refused to return B.S.'s passport when asked and forced him to lie to his parents about the nature of his stay. Id. at ¶ 9(c)-(f).

---

[1] Upon Motion of Defendant Kaur, the Court severed Counts VI and VII from the indictment on October 11, 2023. ECF Nos. 50, 88. A new trial for Counts VI and VII has been set to begin on March 25, 2023. ECF No. 97.

During discovery, on September 22, 2023, Singh notified the Government of his intention to call a cultural expert, Dr. Rewa Singh ("the expert").[2] ECF No. 94. On October 24, 2023, the Government filed a MOTION FOR LEAVE TO FILE A MOTION TO EXCLUDE DEFENDANT'S EXPERT (ECF No. 94). The Court granted the MOTION FOR LEAVE on November 3, 2023. ECF No. 98. The Government filed the Motion and the accompanying memorandum in support (ECF No. 100) on the same day.

The Government attached to its memorandum a copy of the expert notice that Singh provided. ECF No. 100-1. The notice consisted of a cover letter written by counsel for Singh and the expert's curriculum vitae ("CV").

The letter set forth that the expert is a Ph.D. sociologist and anthropologist from India who would testify on the topics of Indian and Punjabi culture. Id. at 1. In particular, the expert would testify as to her specialized knowledge of how long-term poverty in Punjab has resulted in "occupational migration," where Punjabi individuals "travel to other countries in order to earn money to send back to their families and communities in India, in part, to assist in their daily living needs." Id. Additionally, the expert would testify as to how impoverished Punjabi individuals would travel to earn money for the specific

---

[2] To avoid confusion, because the expert and the defendant coincidentally share the same last name, Dr. Singh will be referred to simply as "the expert."

4

purpose of funding extravagant weddings, which are central to Punjabi culture. Id. at 1-2. Finally, the letter concluded, the expert would testify as to how important family is in Punjabi culture, and how "engag[ing] in practices antithetical to their responsibilities to their family and community" would negatively impact Punjabi individuals. Id. at 2-3.

The CV set forth the expert's education and experience. At the time of filing, the expert reported being an Assistant Professor at Amity University in Noida, India. Id. at 5. She has also participated in field work at cultural sites in Australia and Fiji. Id. at 5-6. Her research has sounded in humanistic, sociological, and anthropological research of individual experiences in various social contexts. See id. at 6-8. In short, the expert's CV presents that she is an expert in cultural-behavioral human experience, as seen in the aggregate. See id.

In its memorandum in support of the Motion, the Government lays out three arguments why the Motion should be granted and the expert excluded: (1) the expert notice was not sufficient under Fed. R. Crim. P. 16(b)(1)(C); (2) the expert's testimony is neither reliable nor relevant; and (3) even if the testimony were reliable and relevant, its probative value is substantially outweighed by a danger of confusion, misleading the jury, delay, and waste under Fed. R. Evid. 403. ECF No. 100.

### *a. The Expert Notice*

The Government's first argument sets out several ways in which the expert notice failed to comply with Fed. R. Crim. P. 16(b)(1)(C). Citing Rule 16(b)(1)(C)(iii), the Government correctly pointed out that the defendant must disclose "a complete statement of all opinions that the defendant will elicit from the witness" and "the bases and reasons" for those opinions.[3] ECF No. 100 at 4. According to the Government, the defendant's filing did not satisfy this rule. Citing Rule 16(b)(1)(C)(v), the Government correctly presented that the "witness must approve and sign the disclosure," unless the defendant explains why they could not. The Government noted that the expert notice, attached as an exhibit to the memorandum (ECF No. 100-1), was not signed by the expert and no explanation was provided as to why. ECF No. 100 at 5. More importantly, the Government argued that the notice merely provided a summary of the opinions to which she would testify at trial--not a complete statement of all of her opinions as required by the Rule. Id. This did not "facilitate trial preparation" in accordance with the 2022 amendment. Id.

---

[3] The Government specifically highlights the advisory committee's note to the 2022 amendment to Rule 16, which deleted the phrase "written summary" and replaced it with the "'complete statement" of witnesses' opinions and the bases and reasons for those opinions." ECF No. 100 at 4. In other words, the 2022 amendment heightened the specificity required in the expert notice.

In response, Singh provided an updated expert notice and CV. ECF Nos. 110, 110-1.[4] The updated notice was signed by the expert, and the updated CV included dates and time ranges so as to better deduce the expert's qualifications. ECF No. 110-1. The CV also included a new cover letter from the expert, which reiterated her qualifications, but did not add anything about the actual opinions she would provide. See id.

Having made these corrections to the expert notice, Singh argues now that the expert notice complies with the discovery order and Fed. R. Crim. P. 16. ECF No. 110 at ¶¶ 6-8. He argues that the expert's education and training are sufficient to support her designation as an expert in her field. Id. Specifically, Singh argues that the paragraph summaries in the notice letter *do* provide specific opinions and the bases and reasons for them. Id. at ¶¶ 6-7. In support, however, he merely offers the same arguments that he offered in support of the initial notice, partially verbatim. Id.; ECF 100-1. Singh does, however, add one new twist: that the testimony will support anticipated evidence that B.S. travelled to the United States specifically to earn money because: (1) his family was impoverished; and (2) a female member of his family was planning a wedding. ECF No. 110 at ¶ 8.

---

[4] Whether Singh was permitted, under Rule 16(b)(1)(C), to amend the expert notice in this way is a separate legal question that the Court ultimately need not consider here.

The Government contends that the corrections in the updated notice (the added signature and date) do not fully rehabilitate the notice's deficiencies. ECF No. 122 at 1-2. It also points out that the expert's supplemental letter indicates that most of her research has been done in Australia and Fiji, not the United States Id. at 2. And, the cover letter and CV seem to emphasize her expertise in other areas. Id.

### b. *The Expert's Reliability and Relevance*

In the Government's second argument, it argues that the expert's proposed testimony is neither relevant nor reliable. First, the Government cites Daubert v. Merrell Dow Pharms., Inc. (interpreting Fed. R. Evid. 702) for the proposition that for testimony to be relevant, it must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." ECF No. 100 at 6 (quoting 509 U.S. 579, 591 (1993)). Second, the Government contends that for testimony to be reliable, it must "be based on sufficient facts or data," "[be] the product of reliable principles and methods," and be that "the expert has reliably applied the principals and methods to the facts of the case." Id. (quoting Fed. R. Evid. 702).

The Government argues that the proposed expert fails both of these requisites. It contends that, even if the dates and time periods were properly added in the updated notice, the statements, opinions, and experience listed on the CV only

8

loosely and vaguely relate to the subject matter of the case, and are thus not relevant. Id. at 7-9.

The critical issue is whether the defendants provided or obtained B.S.'s labor or services (elements of the offense as set forth in 18 U.S.C. § 1589(a)(1)-(4)), and, the Government argues that a cultural expert does not shed light on this factual question. Id. at 8. And, says the Government, the expert's expertise is not necessary to understand the point for which it is being offered: that sometimes people travel to the United States to make money. Id. at 8-9 (citing Scott v. Sears, Roebuck & Co., 789 F.3d 437, 449 (4th Cir. 1986)). The Government cites several other cases in which "cultural experts" were excluded under similar circumstances--where their expert knowledge and testimony was irrelevant to the factual issue at hand. Id. at 9-10.

Conversely, Singh argues that Fed. R. Evid. 702, Daubert, and Daubert's progeny require that the Court's gatekeeping role should not replace the adversary system. In other words, Singh argues that the bar for excluding an expert is high, and "[a]ny doubt regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." ECF No. 110 at ¶¶ 2-3 (citing Mack v. Amerisource Bergen Drug Corp., 671 F. Supp. 2d 706, 709 (D. Md. 2009)). Furthermore, Singh argues that the expert is more than qualified to support her

9

designation and allow her testimony in this case. He argues that the expert's CV shows that her work has delved deeply into the Indian diaspora in foreign countries, specifically related to the cultural causes of occupational migration of Indians. Id. at ¶ 10. So, says Singh, her expertise and opinions will assist the jury in evaluating evidence that B.S. travelled to the United States to make money for his family and sister. Id. at ¶ 11. Notably, Singh does not seem to address the Government's contention that the expert's knowledge does not have to do with the elements of the offense. Nor does he address the argument that her testimony is not necessary for the average juror to understand the mere point that often, immigrants travel to the United States to earn money to send back home.

The Government reiterates that, even if the proposed testimony could be considered reliable, the testimony is not relevant. That is because it will not "help the trier of fact . . . to determine a fact in issue." ECF No. 122 at 2 (quoting Fed. R. Evid. 702). According to the Government, all the expert proposes to do is "testify to general cultural trends and topics that are irrelevant to the specific factual circumstances of the case." Id. Even if the expert's testimony is probative of B.S.'s initial motivation to come to the United States, the indictment alleges conduct on the part of the defendants that is completely severed from B.S.'s motivations and is therefore irrelevant. Id.

10

at 3 n.1. In short, the Government argues that a jury does not need expert help understanding that people emigrate to the United States to earn more money for families. Id. at 5. And, it reasserts that several cases have held that general "cultural expert" testimony that does not go to the facts or elements of the case should be excluded. Id. at 3-4.

 *c. Risk of Unfair Prejudice, Confusion, Delay, or Waste Under Fed. R. Evid. 403*

In the Government's third argument, it argues that, even if the testimony was relevant and reliable, its probative value would be substantially outweighed by the risk of prejudice, confusion, delay, or waste of time. ECF No. 100 at 11 (citing Fed. R. Evid. 403). Relying on Daubert again, the Government reminds that "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." Id. (quoting 509 U.S. at 595). Because of the lack of relevance, says the Government, the "general cultural concepts" the expert might describe would only confuse the jury and waste time. Id. at 12. The Government also cites to an analogous order from the Eastern District of Virginia in which a cultural expert was excluded for this very reason. Id. (citing Order, United States v. Aman, No. 3:19-cr-85-JAG (E.D. Va. Apr. 26, 2022), ECF No. 190).

11

Singh argues that the high bar for exclusion applies to Rule 403 as well as Rule 702. ECF 110 at ¶ 4. Quoting Sines v. Kessler, he argues that the mere fact that evidence will be damaging to an opposing party is not sufficient to exclude that evidence on Rule 403 grounds--the risk must *substantially* outweigh the evidence's probative value. Id. (quoting 3:17-cv-72, 2021 WL 1431296, at *4 (W.D. Va. Apr. 15, 2021).

## DISCUSSION

### I. Legal Standard

Under Fed. R. Evid. 702, as amended on December 1, 2023, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

The Court must "undertak[e] its role as gatekeeper" to determine that the expert testimony "will aid the jury in

12

679 F.3d 146, 162 (4th Cir. 2012); Daubert, 509 U.S. at 591. This determination is a two-faceted inquiry. The first facet "necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable," and the second facet "requires an analysis of whether the opinion is relevant to the facts at issue." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260 (4th Cir. 1999). But Courts should not pre-adjudicate the weight of expert testimony. If the admissibility question is close, any doubt or "tie" should be resolved in favor of admitting the expert. Amerisource Bergen, 671 F. Supp. 2d at 709.

"With respect to reliability, the district court must ensure that the proffered expert opinion is based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." McKiver v. Murphy-Brown, LLC, 980 F.3d 937, 959 (4th Cir. 2020) (quoting Daubert, 509 U.S. at 597)). "The Daubert Court provided factors intended to guide lower courts in identifying the level of reliability in expert testimony. Those factors are as follows:

> (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique enjoys general

13

> acceptance    within    a    relevant    scientific
> community."

Holmes v. Wing Enters., Inc., No. 1:08-cv-822, 2009 WL 1809985,
at *3 (E.D. Va. June 23, 2009) (citing Phelan v. Synthes
(U.S.A.), 35 Fed. App'x 102, 106 (4th Cir. 2002); Daubert, 509
U.S. at 592-94). These factors "do not constitute a definitive
checklist or test," rather, the inquiry "must be flexible and
case-specific." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S.
137, 150 (1999); Simo v. Mitsubishi Motors N. Am., Inc., 245
Fed. App'x 295, 301 (4th Cir. 2007).

"Relevant evidence, of course, is evidence that helps 'the
trier of fact to understand the evidence or to determine a fact
in issue.'" Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir.
2017) (quoting Daubert, 509 U.S. at 591)). "An expert's opinion
is relevant if it has 'a valid scientific connection to the
pertinent inquiry.'" Sardis v. Overhead Door Corp., 10 F.4th
268, 281 (4th Cir. 2021) (quoting Belville v. Ford Motor Co.,
919 F.3d 224, 232 (4th Cir. 2019)). Moreover, the relevance
requirement "prohibits the use of expert testimony related to
matters which are 'obviously . . . within the common knowledge
of jurors.'" United States v. Lespier, 725 F.3d 437, 449 (4th
Cir. 2013) (quoting Scott v. Sears Roebuck & Co., 789 F.2d
1052, 1055 (4th Cir.1986)). "Simply put, if an opinion is not

14

relevant to a fact at issue, Daubert requires that it be excluded." Sardis, 10 F.4th at 281.

Importantly, the proponent of the expert testimony must demonstrate this, and indeed, each factor by a preponderance of the evidence ("more likely than not"). And, even if relevant and reliable, a court may always still exclude expert testimony "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see also United States v. Katsipis, 598 F. App'x 162, 164 (4th Cir. 2015). Even if Rule 702 does not bar the admission of an expert's opinion, courts should exclude that testimony on Rule 403 grounds if it is "more likely to confuse the jury than to impart probative information." In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. and Prods. Liab. Litig. (No II) MDL 2502, 892 F.3d 624, 635 (4th Cir. 2018).

Many courts have excluded, on relevance grounds, so-called "cultural experts" who offered general background testimony that did not specifically relate to the offense at hand. E.g., United States v. Amawi, 695 F.3d 457, 480 (6th Cir. 2012) (upholding the district court's exclusion of experts on "the history of Islam, jihad, and the rise of modern day jihadist social movements" and "politics and cultural norms in the middle east"

where the defendants were charged with conspiracy to provide material support to terrorists and distributing information regarding weapons of mass destruction); United States v. Abdush-Shakur, 465 F.3d 458, 466-67 (10th Cir. 2006) (upholding the exclusion of an expert on the "culture of violence in prisons" because the prison's cultural norms would not "negate any of the elements of the charged crime").

In fact, just last year a court in this division excluded a similar witness, in another forced labor case, for similar reasons. In United States v. Aman, the court excluded experts who would testify to similar, general, cultural information because their testimony would "be of marginal assistance to the jury in deciding a factual dispute." Order at 2-3, No. 3:19-cr-085-JAG (E.D. Va. Apr. 26, 2022), ECF No. 190. And, too, the court held that the probative value of the testimony was "substantially outweighed by a danger of . . . confusing the issues [and] misleading the jury." Id. (quoting Fed. R. Evid. 403).

Finally, Fed. R. Crim. P. 16(b)(1)(C)(iii) requires that "for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705," the "defendant must disclose to the Government" a "complete statement of all opinions that the defendant will elicit from the witness" and

"the bases and reasons" for those opinions.[5] If an expert notice does not "describe [the expert's] opinions beyond stating the conclusion he had reached and [does] not give the reasons for those opinions as required," the notice does not comply with Rule 16(b)(1)(C). And, "Rule 16(d)(2) specifically allows the district court to "prohibit the party [who does not comply with the discovery rules] from introducing evidence not disclosed." United States v. Barile, 286 F.3d 749, 759 (4th Cir. 2002).

## II. Analysis

As an initial matter, the form of the expert notice that Singh disclosed to the Government is at issue. The original notice was not signed by the witness and had no explanation as to why not, in violation of Fed. R. Crim. P. 16(b)(1)(C)(v). Nor did it contain any dates or durations of the expert's education and experience, by which the reliability of her expertise needed to be adjudged. More importantly, the notice apparently only described the type of testimony to be offered, not "a complete statement of all opinions that the defendant will elicit from the witness" as required by Fed. R. Crim. P. 16(b)(1)(C)(iii).

Singh then provided an updated notice that included the witness's signature and updated dates. This cured the Rule 16(b)(1)(C)(v) defect. The updated notice also included a cover

---

[5] Also, the "witness must approve and sign the disclosure . . . ." Fed. R. Crim P. 16(b)(1)(C)(v).

letter from the expert, seemingly aiming to bolster its substance. However, even with the updated cover letter, the notice falls short of the requirements of Rule 16(b)(1)(C)(iii).

Rule 16(b)(1)(C)(iii), and the 2022 amendment thereto, explicitly require "a complete statement of all opinions that the defendant will elicit from the witness." The amendment makes clear that it "substitute[d] specific requirements that the parties provide 'a complete statement' of the witness's opinions, the bases and reasons for those opinions, the witness's qualifications, and a list of other cases in which the witness has testified in the past 4 years."[6] Fed. R. Crim. P. 16 advisory committee's note to 2022 amendment. Here, neither the original or the updated notice satisfies this requirement. The letter makes clear the *types* of opinions that the expert will provide, but only nominally indicates their substance. This fails the Rule 16(b)(1)(C) analysis, and the expert testimony offered by Singh is excludable on that ground alone.

Even if the Court were to assume, however, that the form of the notice complies with the discovery rules, the substance of the testimony also fails the relevance and reliability inquiries under Daubert and its progeny.

---

[6] The expert notice and CV both make clear that the expert has never testified as an expert witness before. ECF Nos. 110-1, 122-1.

18

First, the testimony would probably be reliable. The Daubert factors counsel specific inquiries into the scientific methodologies used in the formation of the opinion to be testified to. See Daubert, 509 U.S. at 592-94. Here, the expert is well-researched and experienced in the Indian diaspora in other countries and Indian cultural norms, behaviors, and customs. She earned her master's degree in anthropology in 2010 and her Ph.D. in 2018 from apparently reputable Indian educational institutions. Presumably, therefore, her theories were tested, were subject to peer review and publication, were subject to specific standards, and enjoy general acceptance in the scientific community of her field. See id.

But, apart from its reliability, the testimony is not relevant. The critical issue in this case is whether the defendants procured B.S.'s labor and services under duress. Singh has indicated in his papers that he intends to provide an alternative theory of how B.S. came to be in the services of the defendants. Specifically, that B.S. instead came to and remained in this district, on his own volition, in order to make money to send back home. Although some testimony supporting this alternative theory may be relevant to Singh's case in chief, there is "a very weak link, if any, between [the] cultural norms and the . . . charges," as was the case in Amawi, 695 F.3d at

19

480. In sum, the expert opinion lacks "a valid scientific connection to the pertinent inquiry." Belville, 919 F.3d at 232.

Moreover, insofar as Singh wants to convince a jury of B.S.'s alternative motive for working at the store, an expert is hardly necessary to provide a jury with this information. Knowledge that persons travel from India to the United States to earn money to send home, for weddings or any other purpose, is certainly within the average juror's common knowledge. In other words, it would not "aid the jury in resolving a factual dispute." Daubert, 509 U.S. at 591. And, as the Court of Appeals has held, Rule 702 "prohibits the use of expert testimony related to matters which are 'obviously . . . within the common knowledge of jurors.'" Lespier, 725 F.3d at 449 (quoting Sears Roebuck & Co., 789 F.2d at 1055).

This lack of relevance dovetails with the final reason for exclusion: risk of confusion and delay under Rule 403. Singh has shown very slight, if any, probative value of the expert testimony. But the expert's expertise, as a doctor of anthropology and sociology, is of a highly academic, technical nature. That evidence runs the risk of "be[ing] both powerful and quite misleading because of the difficulty in evaluating it." Daubert, 509 U.S. at 595. This expert is therefore very similar to the expert who was excluded in Aman. Here, as there, the testimony would "be of marginal assistance to the jury in

20

deciding a factual dispute" and whatever probative value it has is "substantially outweighed by a danger of . . . confusing the issues [and] misleading the jury." Order at 2-3, No. 3:19-cr-085-JAG (E.D. Va. Apr. 26, 2022), ECF No. 190 (quoting Fed. R. Evid. 403).

## CONCLUSION

For the reasons set forth above, and on the record during the hearing on December 4, 2023, the GOVERNMENT'S MOTION TO EXCLUDE DEFENDANT'S EXPERT (ECF No. 99) is granted.

It is so ORDERED.

/s/    $R\mathcal{E}\mathcal{P}$

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 13, 2023